UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VANESSA BLAIN,

   Plaintiff,

v.                 Case No. 8:20-cv-49-T-24 SPF

CENTURION OF FLORIDA,
L.L.C., ET AL.,

   Defendants.
_____/

# ORDER

   This cause comes before the Court on two motions: (1) Defendant Baker's Motion to Dismiss (Doc. No. 31), which Plaintiff opposes (Doc. No. 33); and (2) Defendants MHM Health Professionals, Inc. and MHM Health Professionals, LLC ( collectively referred to as "MHM") and Centurion of Florida, LLC's ("Centurion") Motion to Dismiss Count III (Doc. No. 32), which Plaintiff opposes (Doc. No. 34). As explained below, the Court finds that Defendant Baker's motion should be granted. The Court also grants Plaintiff leave to amend, which makes review of Centurion and MHM's motion to dismiss unnecessary.

## I. Standard of Review

   In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff. See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)). The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

555 (2007)(citation omitted). As such, a plaintiff is required to allege "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." Id. (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

## II. Background

Plaintiff Vanessa Blain was a Pharmacist Tech/Nursing Assistant at Hardee Correctional Institution ("HCI"), a Florida state prison. Plaintiff was employed by Defendant Centurion. Centurion subcontracts with Defendant MHM to provide medical staffing to Defendant HCI. Plaintiff contends that Centurion and MHM are her joint employers. Defendant Shane Baker is the warden at HCI.

Plaintiff, an African American woman, contends that Defendants' race discrimination and retaliation resulted in the termination of her employment. She asserts race discrimination and retaliation claims under the Florida Civil Rights Act ("FCRA"), § 1981, and § 1983. Upon motions by Defendants, the Court dismissed her initial complaint without prejudice, outlined the necessary elements of each of the claims she was asserting, and granted her leave to amend her complaint. (Doc. No. 23).

Plaintiff's amended complaint, while longer than her original complaint, is not much clearer regarding the factual basis for her claims. In her amended complaint (Doc. No. 29), Plaintiff sets forth a string of complaints that she made to Defendants, including several

complaints that do not allege race discrimination. For example, in October and November of 2017, Plaintiff complained to Centurion about "'work related conflicts and issues.'" (Doc. No. 29, ¶ 8). In February 2018, Plaintiff wrote an incident report about a co-worker hitting her with a bag. On September 25 2018, Plaintiff wrote an incident report stating that someone maliciously destroyed her radio.

Additionally, Plaintiff alleges that on March 9, 2018, she "complained that she was not treated in the same way as other employees in that other, more recently hired employees, were allowed to take leave that they had not accumulated, whereas she was not." (Doc. No. 29, ¶ 10). Plaintiff also alleges that she became aware of a white employee that had been allowed such leave; however, she does not state in her amended complaint that she specifically complained to Defendants that she believed that the different treatment was based on race.

On September 24, 2018, Plaintiff did make a race discrimination complaint to Centurion. Specifically, Plaintiff complained that co-workers were harassing her, making racial comments, and using the N-word.

Thereafter, on October 23, 2018, Plaintiff learned that a co-worker, Susan McGrath, told an HCI prison guard that she (McGrath) "'needed to find drugs on [Plaintiff] in order to get [Plaintiff] fired.'" (Doc. No. 29, ¶ 13). Plaintiff filed an incident report about this and complained to Centurion, MHM, Baker, and HCI. Plaintiff does not specifically allege in the amended complaint that she complained that the incident was race-related.[1]

On October 26, 2018, McGrath accused Plaintiff of damaging her car, yet surveillance cameras showed that Plaintiff had not done so. That same day, Baker, the warden, terminated

---

[1] In other parts of the amended complaint that are not incorporated into her retaliation claim, Plaintiff alleges that white employees targeted her because of her race. However, she does not allege that McGrath was white or that McGrath targeted her because of her race.

3

both Plaintiff and McGrath's prison access and stated that they both were no longer allowed to work at HCI. Baker did not cite a reason for the termination of Plaintiff's prison access. However, Plaintiff contends that MHM and Centurion conspired with Baker and HCI to have Baker terminate her prison access; Plaintiff contends that Centurion and MHM told Baker that Plaintiff had been rude to employees.

On October 27, 2018, Plaintiff was terminated from her employment with Centurion and MHM. Centurion and MHM took the position that without prison access at HCI, they could not continue to employ her. Centurion and MHM did not make any efforts to employ Plaintiff at any of the other correctional facilities at which they provided medical services.

Based on the above, Plaintiff asserts six claims. In Count I, she asserts a race discrimination claim under the FCRA against Centurion and MHM, alleging that they were her joint-employers. She contends that all of their actions and inactions in response to her complaints and these incidents, including her termination, were based on her race.

In Count II, Plaintiff asserts a retaliation claim under the FCRA against all of the defendants. She contends that HCI and Baker terminated her prison access, and Centurion and MHM terminated her employment, because of her race discrimination complaints. She identifies her September 24, 2018 and October 23, 2018 complaints as the basis for this claim.

In Count III, Plaintiff asserts a § 1983 claim against Centurion and MHM. Likewise, in Count V, she asserts a § 1983 claim against Baker and HCI.

In Count IV, Plaintiff asserts a § 1981 claim against Baker and HCI. Plaintiff alleges that Baker and HCI denied her access to HCI because of her race.

In Count VI, Plaintiff asserts a race discrimination claim under the FCRA against Baker and HCI. Plaintiff acknowledges that Baker and HCI were not her direct employers; however,

she contends that they had significant control over major aspects of her employment. She contends that their direct action—terminating her prison access—led to the termination of her employment, and their action was based on her race.

### III. Motions to Dismiss

Pending before the Court are two motions to dismiss. Baker seeks to dismiss all of the claims asserted against him. Centurion and MHM seek dismissal of Count III—the § 1983 claim. Accordingly, the Court will address each motion.

### A. Baker's Motion to Dismiss

Plaintiff asserts four claims against Baker: (1) race discrimination under the FCRA, (2) retaliation under the FCRA, (3) a § 1981 race discrimination claim, and (4) a § 1983 claim. Before analyzing each claim asserted against Baker, the Court notes that it is unclear whether Plaintiff is asserting these claims against him in his individual and/or his official capacity. The caption of the amended complaint identifies Baker in his official capacity as the warden of HCI, but the introductory paragraph identifies Baker in both his individual and official capacities.[2] Further, it is unclear why Plaintiff is asserting claims against Baker in his official capacity as well as asserting the same claims against HCI, since, as the Court pointed out in its prior order, a claim against Baker in his official capacity as the warden of HCI is equivalent to a claim against HCI. See Carpenter v. Horta, 2019 WL 6828174, at *2 (M.D. Fla. Dec. 13, 2019).

---

[2] As explained in this Order, the Court dismisses the claims against Baker without prejudice. If Plaintiff re-asserts these claims against Baker in a second amended complaint, and if she clearly identifies that she is asserting claims against Baker in his individual capacity, the issue of qualified immunity may arise. In the instant motion, Baker appears to make a six-sentence qualified immunity argument with no citation to case law. If Baker intends to move for dismissal based on qualified immunity again, he should cite to case law, not simply for the appropriate standard to be applied, but to case law with similar facts to the instant case.

### 1. Race Discrimination under the FCRA

Plaintiff asserts a race discrimination claim under the FCRA against Baker. In order to state such a claim, Plaintiff must allege the following: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a person outside of her protected class or was treated less favorably than a similarly-situated individual outside of her protected class. See Clymer v. Caterpillar, Inc., 2010 WL 11549901, at *2 (S.D. Fla. Dec. 13, 2010)(citations omitted). Plaintiff has alleged that she is a member of a protected class and that she was qualified for her position. (Doc. No. 29, ¶ 2, 24, 50). Baker argues that this claim must be dismissed, because Plaintiff cannot allege facts supporting the other two elements.

Baker argues that he was not Plaintiff's employer, and therefore, he cannot be liable for any employment discrimination. The Court rejects Baker's argument that a direct employer-employee relationship is required for liability. The case law addressing this issue in the Title VII context sets forth the circumstances in which liability can be imposed, and cases construing Title VII are applicable to FCRA claims. See Mehta v. HCA Health Services of Florida, Inc., 2006 WL 3133327, at *4 n.3 (M.D. Fla. Oct. 31, 2006); Florida Education Assoc. v. Department of Education, 2018 WL 10560519, at *4 (N.D. Fla. Dec. 19, 2018). Specifically, Baker can be held liable for race discrimination if: (1) he controlled Plaintiff's access to employment, and (2) he denied her access based on her race. See Pardazi v. Cullman Medical Center, 838 F.2d 1155, 1156 (11th Cir. 1988).

In Pardazi, the plaintiff, a doctor, was employed by an entity that required that he have staff privileges at the defendant-hospital. See id. at 1155. The plaintiff alleged that the hospital

initially denied his application for staff privileges and then treated him differently by requiring him to have a one-year observation period as opposed to the normal four-month observation period. See id. He alleged that these actions were taken based on his national origin. See id. at 1155-56. The lower court dismissed the plaintiff's claim of national origin discrimination under Title VII, and the appellate court reversed, stating:

> Several courts have recognized that Title VII's protection does extend to a claim that a defendant has interfered with an individual's employment relationship with a third party. . . . If [the plaintiff] can prove his claim that the hospital's discrimination against him interfered with his employment opportunities with [his employer], we hold that Title VII would encompass such a claim.

Id. at 1156 (internal citations omitted); see also Mehta, 2006 WL 3133327, at *3, 5 (considering the same type of claim under the FCRA); Florida Education Assoc., 2018 WL 10560519, at *4 (stating that the same analysis applies to claims under the FCRA).

Likewise, in the instant case, Plaintiff alleges that Baker controlled her prison access and that he terminated her access based on her race. Plaintiff, however, fails to allege any facts to support her conclusory allegation that Baker terminated her prison access based on her race. As previously stated, in order to state a race discrimination claim, Plaintiff must allege that she was replaced by a person outside of her protected class or was treated less favorably than a similarly-situated individual outside of her protected class. Plaintiff simply alleges in the amended complaint that there was no other basis for Baker's decision, so his decision must have been based on her race.[3]

---

[3] Plaintiff alleges that "the only reason [Plaintiff] had her gate pass cut by . . . Baker . . . is because she is African-American, as no other reason was provided and there is no other reason." (Doc. No. 29, ¶ 32, 50)

7

In response to Baker's motion, Plaintiff contends that she has alleged that she was treated less favorably by Baker than McGrath (the person who wanted drugs planted on Plaintiff), because Plaintiff was punished to the same degree as McGrath despite the fact that McGrath was the perpetrator and Plaintiff was the victim. Plaintiff, however, does not allege McGrath's race. Furthermore, Plaintiff is arguing the opposite of what is required—she is arguing that she and McGrath are not similarly situated because McGrath was a perpetrator and Plaintiff was a victim. Plaintiff must allege that she and someone outside of her protected class acted in the same or similar manner, but Baker treated them differently.

Accordingly, the Court finds that Plaintiff has failed to adequately allege that Baker's decision to terminate her prison access was based on her race. Therefore, the Court grants Baker's motion to dismiss this claim. The Court will grant Plaintiff leave to amend, and if she chooses to pursue this claim, she must allege a factual basis for her contention that Baker terminated her prison access due to her race.

### 2. Retaliation under the FCRA

Plaintiff also asserts a retaliation claim against Baker. In order to state a retaliation claim, Plaintiff must allege three things: (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the statutorily protected activity and the adverse action. See Hamilton v. Sheridan Healthcorp. Inc., 602 Fed. Appx. 485, 488-89 (11th Cir. 2015). Baker argues that this claim fails, because Plaintiff does not allege that she engaged in statutorily protected conduct. The Court agrees.

Plaintiff bases her retaliation claim against Baker on her October 23, 2018 complaint to him about McGrath trying to get someone to plant drugs on her in order to get her fired. However, Plaintiff does not specifically allege that when she made the complaint, she said that

8

the incident was due to her race or otherwise complained of race discrimination. In order for her October 23, 2018 complaint to be considered a statutorily protected activity, Plaintiff must have communicated that she believed that she was being subject to unlawful discrimination. See Murphy v. City of Aventura, 383 Fed. Appx. 915, 918 (11th Cir. 2010)(citations omitted).

Accordingly, the Court grants Baker's motion to dismiss this claim. The Court will grant Plaintiff leave to amend, and if she chooses to pursue this claim, she must allege that she complained to Baker that she was being subjected to race discrimination.

### 3. Section 1981 Claim

Plaintiff also asserts a § 1981 claim against Baker, contending that Baker terminated her prison access because of her race. Discrimination claims brought under §1981 are evaluated under the same framework as FCRA claims. See Bender v. Miami Shores Village, 578 Fed. Appx. 822, 824 n.2 (11th Cir. 2014)(stating that the elements of § 1981 race discrimination in the employment context are the same as those for a Title VII claim, and that Title VII cases can be used to evaluate FCRA claims). Therefore, the analysis set forth above with respect to Plaintiff's FCRA discrimination claim applies to her § 1981 claim.

Specifically, the fact that Baker was not Plaintiff's direct employer does not preclude liability if Plaintiff can show that: (1) Baker controlled Plaintiff's access to the prison, and (2) he denied her access based on her race. See Zaklama v. Mt. Sinai Medical Center, 842 F.2d 291, 294-95 (11th Cir. 1988)(applying this analysis to a claim under § 1981). As previously explained in connection with her discrimination claim under the FCRA, Plaintiff has failed to sufficiently allege that Baker denied her prison access because of her race. Therefore, the Court grants Baker's motion to dismiss this claim. The Court will grant Plaintiff leave to amend, and if

she chooses to pursue this claim, she must allege a factual basis for her contention that Baker terminated her prison access due to her race.

### 4. Section 1983 Claim

Plaintiff also asserts a § 1983 claim against Baker. In order to state a §1983 claim, Plaintiff must allege two things: (1) an act or omission by Baker that deprived her of a constitutional or other federal right; and (2) the act or omission was done by a person acting under color of law. See Carpenter, 2019 WL 6828174, at *1.

Baker argues that this claim should be dismissed, because Plaintiff has not alleged that he deprived her of a constitutional or other federal right. Plaintiff responds that Baker deprived her of her Fourteenth Amendment right to Equal Protection.

In order to state a §1983 equal protection race discrimination claim, Plaintiff must allege that Baker had a discriminatory motive or purpose and that he was personally involved in the act that resulted in the constitutional deprivation. See Martin v. Shelby County Board of Education, 756 Fed. Appx. 920, 925 (11th Cir. 2018). "The analysis of a disparate treatment claim is the same whether that claim is brought under Title VII, § 1981 or § 1983." Id. Therefore, for the same reasons as set forth above, this claim fails and must be dismissed, because Plaintiff has not sufficiently alleged that Baker terminated Plaintiff's prison access based on her race, thus violating her right to equal protection. The Court will allow Plaintiff leave to amend in order to correct this deficiency.

### B. Centurion and MHM's Motion to Dismiss

Centurion and MHM move to dismiss the § 1983 claim asserted against them. A review of the motion and response shows that they did not understand the new basis for Plaintiff's §

1983 claim in her amended complaint.[4]  Because the Court has granted Plaintiff leave to amend her complaint, the Court need not address the §1983 claim against Centurion and MHM. Instead, Centurion and MHM can move to dismiss this claim in response to Plaintiff's second amended complaint if Plaintiff files a second amended complaint and they still believe that dismissal is warranted.

## IV.  Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Baker's Motion to Dismiss (Doc. No. 31) is **GRANTED**.

(2) The Court **TERMINATES** Centurion and MHM's Motion to Dismiss Count III (Doc. No. 32).

(3) Plaintiff's claims against Baker are dismissed without prejudice.

(4) Plaintiff is granted leave to file a second amended complaint by *April 30, 2020*.  If Plaintiff fails to file a second amended complaint, Centurion and MHM can re-file a motion to dismiss directed to Count III of the current amended complaint by *May 8, 2020*.

DONE AND ORDERED at Tampa, Florida, this 14th day of April, 2020.

_____
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

---

[4] Initially, Plaintiff's § 1983 claim was based on a procedural due process claim relating to the termination of her employment.  Now, Plaintiff's § 1983 claim is based on her contention that Defendants violated her right to equal protection due to their alleged discrimination.

11