UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

VANESSA BLAIN,

       Plaintiff,

v.                                                Case No.  8:20-cv-49-T-24 SPF

CENTURION OF FLORIDA,
L.L.C., ET AL.,

       Defendants.
_____/

# ORDER

This cause comes before the Court on two motions: (1) Defendant Baker's Motion to Dismiss (Doc. No. 37), which Plaintiff opposes (Doc. No. 39); and (2) Defendants MHM Health Professionals, Inc. and MHM Health Professionals, LLC ( collectively referred to as "MHM") and Centurion of Florida, LLC's ("Centurion") Motion to Dismiss Count III (Doc. No. 38), which Plaintiff opposes (Doc. No. 40).  As explained below, these motions are granted in part and denied in part.

**I.  Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the light most favorable to the plaintiff.  See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959, 962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)).  The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim.  Instead, Rule 8(a)(2) requires a short and plain statement of the claim showing that the pleader is entitled to relief in order to give the defendant fair notice of what the claim is and the grounds upon which it rests.  See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)(citation omitted).  As such, a plaintiff is required to allege "more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citation omitted). While the Court must assume that all of the allegations in the complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right to relief above the speculative level." Id. (citation omitted). The standard on a 12(b)(6) motion is not whether the plaintiff will ultimately prevail in his or her theories, but whether the allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the allegations. See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir. 1986).

**II.  Background**

Plaintiff Vanessa Blain was a Pharmacist Tech/Nursing Assistant at Hardee Correctional Institution ("HCI"), a Florida state prison. Plaintiff was employed by Defendant Centurion. Centurion subcontracts with Defendant MHM to provide medical staffing to Defendant HCI. Plaintiff contends that Centurion and MHM are her joint employers. Defendant Shane Baker is the warden at HCI.

Plaintiff, an African American woman, contends that Defendants' race discrimination and retaliation resulted in the termination of her employment. She asserts race discrimination and retaliation claims under the Florida Civil Rights Act ("FCRA"), § 1981, and § 1983.

Upon motions by Defendants, the Court dismissed her initial complaint without prejudice, outlined the necessary elements of each of the claims she was asserting, and granted her leave to amend her complaint. (Doc. No. 23). Thereafter, Plaintiff filed an amended complaint. (Doc. No. 29). Upon subsequent motion by Baker, the Court dismissed Plaintiff's claims in the amended complaint against him without prejudice, again outlined the necessary elements of her claims, and granted her leave to amend her complaint. (Doc. No. 35). Plaintiff filed a second amended complaint (Doc. No. 36), which is the subject of the instant motions.

In her second amended complaint, Plaintiff again lists the same string of complaints that she made to Defendants, including several complaints that do not allege race discrimination.[1] However, Plaintiff alleges that on September 24, 2018, she complained about race discrimination to Centurion. Specifically, Plaintiff complained that co-workers were harassing her, making racial comments, and using the N-word.

Thereafter, on October 23, 2018, Plaintiff learned that a white co-worker, Susan McGrath, told an HCI prison guard that she (McGrath) "'needed to find drugs' on [Plaintiff] in order to get [Plaintiff] fired." (Doc. No. 36, ¶ 13). Plaintiff filed an incident report about this incident and complained to Centurion, MHM, Baker, and HCI. While Plaintiff states in her second amended complaint that McGrath's actions were taken because of Plaintiff's race, Plaintiff again fails to specifically allege that she complained to Defendants that the incident was race-related. However, Plaintiff later makes references to complaints of race discrimination throughout her second amended complaint. (Doc. No. 36, ¶ 31, 32, 34, 35).

On October 26, 2018, McGrath accused Plaintiff of damaging her car, yet surveillance cameras showed that Plaintiff had not done so. That same day, Baker, the warden, terminated both Plaintiff and McGrath's prison access and stated that they both were no longer allowed to work at HCI. Baker did not cite a reason for the termination of Plaintiff's prison access, and he specifically told Plaintiff that her prison access was not terminated due to misconduct. However, Plaintiff contends that MHM and Centurion conspired with Baker and HCI to have Baker

---

[1] For example, in October and November of 2017, Plaintiff complained to Centurion about "'work related conflicts and issues.'" (Doc. No. 36, ¶ 8). In February 2018, Plaintiff wrote an incident report about a co-worker hitting her with a bag. On September 25 2018, Plaintiff wrote an incident report stating that someone maliciously destroyed her radio. Additionally, Plaintiff complained on March 9, 2018 regarding different treatment for employees requesting leave, but she fails to state in her second amended complaint that she specifically complained to Defendants that she believed that the different treatment was based on race.

3

terminate her prison access; Plaintiff contends that Centurion and MHM told Baker that Plaintiff had been rude to employees.

On October 27, 2018, Plaintiff was terminated from her employment with Centurion and MHM. Centurion and MHM took the position that without prison access at HCI, they could not continue to employ her. Centurion and MHM did not make any efforts to employ Plaintiff at any of the other correctional facilities at which they provided medical services. Plaintiff was replaced by a white employee.

Based on the above, Plaintiff asserts six claims. In Count I, she asserts a race discrimination claim under the FCRA against Centurion and MHM, alleging that they were her joint-employers. Plaintiff contends that she was subjected to a hostile work environment and was terminated based on her race.

In Count II, Plaintiff asserts a retaliation claim under the FCRA against all of the defendants. She contends that HCI and Baker terminated her prison access, and Centurion and MHM terminated her employment, because of her race discrimination complaints. She identifies her September 24, 2018 complaint to Centurion and MHM, as well as her October 23, 2018 complaint to Baker and HCI, as the basis for this claim.

In Count III, Plaintiff asserts a § 1983 claim against Centurion and MHM. Likewise, in Count V, she asserts a § 1983 claim against Baker and HCI.

In Count IV, Plaintiff asserts a § 1981 claim against Baker and HCI. Plaintiff alleges that Baker and HCI denied her access to HCI because of her race.

In Count VI, Plaintiff asserts a race discrimination claim under the FCRA against Baker and HCI. Plaintiff acknowledges that Baker and HCI were not her direct employers; however, she contends that they had significant control over major aspects of her employment. She

contends that their direct action—terminating her prison access—led to the termination of her employment, and their action was based on her race.

### III.  Motions to Dismiss

Pending before the Court are two motions to dismiss.  Baker seeks to dismiss all of the claims asserted against him.  Centurion and MHM seek dismissal of Count III—the § 1983 claim.  Accordingly, the Court will address each motion.

#### A.  Baker's Motion to Dismiss

Plaintiff asserts four claims against Baker in both his official and personal capacities: (1) race discrimination under the FCRA, (2) retaliation under the FCRA, (3) a § 1981 race discrimination claim, and (4) a § 1983 claim.  Bakers moves to dismiss all four claims against him.  Accordingly, the Court will analyze each claim.

##### 1.  Race Discrimination under the FCRA

Plaintiff asserts a race discrimination claim under the FCRA against Baker.  In order to state such a claim, Plaintiff must allege the following: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a person outside of her protected class or was treated less favorably than a similarly-situated individual outside of her protected class.[2]  See Clymer v. Caterpillar, Inc., 2010 WL 11549901, at *2 (S.D. Fla. Dec. 13, 2010)(citations omitted).  Baker concedes that

---

[2] A direct employer-employee relationship is not required for liability.  The case law addressing this issue in the Title VII context sets forth the circumstances in which liability can be imposed, and cases construing Title VII are applicable to FCRA claims.  See Mehta v. HCA Health Services of Florida, Inc., 2006 WL 3133327, at *4 n.3 (M.D. Fla. Oct. 31, 2006); Florida Education Assoc. v. Department of Education, 2018 WL 10560519, at *4 (N.D. Fla. Dec. 19, 2018).  Specifically, Baker can be held liable for race discrimination if: (1) he controlled Plaintiff's access to employment, and (2) he denied her access based on her race.  See Pardazi v. Cullman Medical Center, 838 F.2d 1155, 1156 (11th Cir. 1988).  Plaintiff has alleged that Baker controlled her access to the prison and that he denied her access based on her race.

5

Plaintiff is a member of a protected class, but he argues that she fails to sufficiently allege the other three elements. The Court disagrees.

First, Plaintiff has alleged that she was qualified for her position. (Doc. No. 36, ¶ 2, 24). Second, she alleges that Baker terminated her prison access because of her race. (Doc. No. 36, ¶ 15, 23, 32, 45-47, 50, 54, 56). Third, she alleges that no similarly situated white employees had their gate access terminated for no reason. (Doc. No. 36, ¶ 15, 45-47). Accordingly, the Court finds that Plaintiff has sufficiently alleged a race discrimination claim under the FCRA and denies Baker's motion on this issue.

### 2. Retaliation under the FCRA

Plaintiff also asserts a retaliation claim against Baker. In order to state a retaliation claim, Plaintiff must allege three things: (1) she engaged in a statutorily protected activity; (2) she suffered a materially adverse action; and (3) there was a causal connection between the statutorily protected activity and the adverse action. See Hamilton v. Sheridan Healthcorp. Inc., 602 Fed. Appx. 485, 488-89 (11th Cir. 2015). Baker argues that this claim fails, because Plaintiff does not allege that she engaged in statutorily protected conduct or that she Baker subjected her to an adverse employment action. The Court rejects these arguments.

Plaintiff bases her retaliation claim against Baker on her October 23, 2018 complaint to him about McGrath trying to get someone to plant drugs on her in order to get her fired. Baker is correct that Plaintiff does not specifically allege that when she made the complaint, she said that the incident was due to her race or otherwise complained of race discrimination. However, Plaintiff later makes references to her complaints of race discrimination. (Doc. No. 36, ¶ 31, 32, 34, 35). The Court construes these allegations in the light most favorable to Plaintiff and views these allegations as supporting her contention that she complained of race discrimination to

Baker and HCI. Baker is free to challenge these allegations by filing a motion for summary judgment.

Likewise, Plaintiff has sufficiently alleged that Baker had subjected her to an adverse employment action. Specifically, she alleges that Baker terminated her prison access because she made a complaint about discrimination. (Doc. No. 36, ¶ 31). Accordingly, the Court finds that Plaintiff has sufficiently alleged a retaliation claim and denies Baker's motion on this issue.

### 3. Section 1981 Claim

Plaintiff also asserts a § 1981 claim against Baker, alleging that Baker terminated her prison access because of her race. Discrimination claims brought under §1981 are evaluated under the same framework as FCRA claims. See Bender v. Miami Shores Village, 578 Fed. Appx. 822, 824 n.2 (11th Cir. 2014)(stating that the elements of § 1981 race discrimination in the employment context are the same as those for a Title VII claim, and that Title VII cases can be used to evaluate FCRA claims). Therefore, the analysis set forth above with respect to Plaintiff's FCRA discrimination claim applies to her § 1981 claim.

The fact that Baker was not Plaintiff's direct employer does not preclude liability if Plaintiff can show that: (1) Baker controlled Plaintiff's access to the prison, and (2) he denied her access based on her race. See Zaklama v. Mt. Sinai Medical Center, 842 F.2d 291, 294-95 (11th Cir. 1988)(applying this analysis to a claim under § 1981). In her complaint, Plaintiff alleges that Baker terminated her prison access due to her race, as no similarly situated white employees had their gate access terminated for no reason. (Doc. No. 36, ¶ 15, 45-47). Accordingly, the Court finds that Plaintiff has sufficiently alleged a § 1981 discrimination claim and denies Baker's motion on this issue.

### 4. Section 1983 Claim

Plaintiff also asserts a § 1983 claim against Baker. In order to state a §1983 claim, Plaintiff must allege two things: (1) an act or omission by Baker that deprived her of a constitutional or other federal right; and (2) the act or omission was done by a person acting under color of law. See Carpenter v. Horta, 2019 WL 6828174, at *1 (M.D. Fla. Dec. 13, 2019).

Baker argues that this claim should be dismissed, because Plaintiff has not alleged that he deprived her of a constitutional or other federal right. Plaintiff responds that Baker deprived her of her Fourteenth Amendment right to equal protection.

In order to state a §1983 equal protection race discrimination claim, Plaintiff must allege that Baker had a discriminatory motive or purpose and that he was personally involved in the act that resulted in the constitutional deprivation. See Martin v. Shelby County Board of Education, 756 Fed. Appx. 920, 925 (11th Cir. 2018). Plaintiff has made such allegations in her complaint. Furthermore, "[t]he analysis of a disparate treatment claim is the same whether that claim is brought under Title VII, § 1981 or § 1983." Id. As explained above, Plaintiff has sufficiently stated a discrimination claim under the FCRA and § 1981. Therefore, the Court finds that Plaintiff has sufficiently alleged § 1983 claim and denies Baker's motion on this issue.

### 5. Personal and Official Capacity Claims

Plaintiff asserts her claims against Baker in both his personal and official capacities. Baker contends that the claims against him in his official capacity should be dismissed, as they are cumulative of the claims against HCI. See Carpenter, 2019 WL 6828174, at *2. Plaintiff fails to respond to this argument. However, it appears that Plaintiff has failed to serve HCI. Plaintiff has been directed to show cause regarding her failure to serve HCI (Doc. No. 41), and as such, HCI may be dismissed as a defendant. If, after Plaintiff responds to the Court's order to

show cause, HCI is not dismissed as a defendant, Baker may re-file his motion arguing that the claims against him in his official capacity should be dismissed as cumulative.

Baker also argues that the claims against him in his personal capacity are subject to dismissal due to qualified immunity. "Qualified immunity offers complete protection for government officials sued in their individual capacities if their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" Jolivette v. Arrowood, 180 Fed. Appx. 883, 885 (11th Cir. 2006)(citations omitted).

Baker, as the warden of HCI, is a government official. Therefore, in analyzing whether he is entitled to qualified immunity, the Court conducts a two-step inquiry. See Maggio v. Sipple, 211 F.3d 1346, 1350 (11th Cir. 2000). First, the Court determines whether Baker was acting within his discretionary authority. See id. Plaintiff does not challenge Baker's contention that he was acting within his discretionary authority as the warden of HCI.

Second, the Court must determine whether Plaintiff has alleged that Baker violated clearly established law. See id. Plaintiff argues that Baker violated clearly established law, because no reasonable official could believe that it is lawful to discriminate on the basis of race. See Jolivette, 180 Fed. Appx. at 886. While that may be true for most of Plaintiff's claims, "'no clearly established right exists under the *equal protection* clause to be free from retaliation.'" Id. at 887 (citation omitted). Therefore, to the extent that Plaintiff's §1983 equal protection claim is based on Baker's alleged retaliation, the claim is dismissed based on qualified immunity. Plaintiff's § 1983 claim against Baker remains to the extent that it is based on race discrimination.

### B. Centurion and MHM's Motion to Dismiss

Centurion and MHM move to dismiss the § 1983 claim asserted against them on two bases. First, they argue that Plaintiff fails to sufficiently allege the elements of this claim. In order to state a discrimination claim under § 1983, Plaintiff must allege the following: (1) she is a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by a person outside of her protected class or was treated less favorably than a similarly-situated individual outside of her protected class. See Hornsby-Culpepper v. Ware, 906 F.3d 1302, 1312 n.7 (11th Cir. 2018). In her complaint, Plaintiff has alleged that she is a member of a protected class, she was qualified for her position, she was terminated, and she was replaced by a white employee. Accordingly, the Court denies Centurion and MHM's motion on this basis.

Second, Centurion and MHM argue that dismissal is required, because an entity is only liable under § 1983 when the execution of a policy or custom causes the injury, and Plaintiff has failed to make such an allegation. See Hill v. Cundiff, 797 F.3d 948, 977 (11th Cir. 2015); Pearson v. Macon-Bibb County Hosp. Authority, 952 F.2d 1274, 1281 (11th Cir. 1992). Plaintiff fails to respond to this argument, and as such, the Court agrees that this claim must be dismissed on this basis.

### IV. Conclusion

Accordingly, it is ORDERED AND ADJUDGED that:

(1) Defendant Baker's Motion to Dismiss (Doc. No. 37) is **GRANTED IN PART AND DENIED IN PART:** The motion is **GRANTED** to the extent that Plaintiff asserts a §1983 claim against Baker in his personal capacity based on her right to be free from retaliation under the equal protection clause; otherwise, the motion is **DENIED**.

(2)   Defendants MHM and Centurion's Motion to Dismiss Count III (Doc. No. 38) is **GRANTED IN PART AND DENIED IN PART:** The motion is **GRANTED** to the extent that the Court dismisses Plaintiff's §1983 claim against Centurion and MHM; otherwise, the motion is **DENIED**.

DONE AND ORDERED at Tampa, Florida, this 27th day of May, 2020.

*/s/ Susan C. Bucklew*
SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record